RITA CASAGRANDA, Executrix of the Estate of MICHAEL
McLAUGHLIN, Deceased, Plaintiff and Appellant, *v.* MARY
E. DONAHUE, PRUDENTIAL SAVINGS AND LOAN ASSOCI-
ATION OF BUTTE, a corporation, and BERNICE HOWELL,
Defendant and Respondents.

No. 14183.
Submitted Sept. 5, 1978.
Decided Oct. 4, 1978.
585 P.2d 1286.

480

William N. Geagan, Butte, for plaintiff and appellant.

Alexander & Harrington, Johnson & Kebe, Poore, Roth, Robischon & Robinson, P.C., Roe & Kiely, Butte, for defendants and respondents.

MR. JUSTICE SHEEHY delivered the opinion of the Court.

This appeal comes from a summary judgment of the District Court, Silver Bow County, quieting title in two joint bank accounts.

Michael McLaughlin, decedent, was born in Ireland, February 24, 1894, and died in Montana, March 18, 1975. As a young man, he emigrated to the United States, settled in Butte, Montana, and became a naturalized citizen. He worked most of his life in the Butte mines from which he contracted a disease known as silicosis which necessitated his retirement and ultimately led to his death.

Although decedent was never married, he had a close relationship with Vina Rowe, until her death November 10, 1963. Decedent and Vina Rowe maintained joint checking and savings accounts in various Butte banks. On November 15, 1963, following

Vina Rowe's death, decedent closed a savings account at the First National Bank of Butte, Montana, which contained $13,978,46 in the names of decedent and Vina Rowe. The entire amount was used to open a new savings account in the same bank in the names of decedent and respondent, Mary Donahue. Both parties signed the deposit agreement. On November 22, 1963, an additional $3,000 was deposited in the account by decedent. On February 2, 1964, a savings account at Prudential Federal Savings and Loan Association of Butte, Montana, bearing decedent's and Vina Rowe's signatures was closed and reopened in decedent and respondent's names. Again, both parties signed the signature card, creating a joint tenancy in the account.

Respondent is decedent's cousin and was his close friend throughout his life time. Respondent lived in Butte until 1963, at which time she accepted employment with the Federal government and moved to Washington D. C., where she now resides. On vacations to Butte, respondent spent considerable time with decedent discussing the distribution of his property upon his death. His desires changed frequently. Respondent did not attempt to withdraw any money from the joint savings accounts during decedent's lifetime. However, no agreement was ever made with decedent to hold or use the funds in the bank accounts for specific purposes.

Decedent executed a Will on November 1, 1966. Appellant, Rita Casagranda was named executrix. By the terms of the Will, decedent bequeathed $1,000 each to appellant, respondent, Catherine E. Donahue and Mrs. Mary Murphy, to be paid out of his estate. The residue of the estate was bequeathed to his niece, Mrs. Daniel Coll.

Following decedent's death, appellant instituted this action to quiet title in the two savings accounts. Appellant's complaint, filed in District Court, Silver Bow County, alleged respondent, First National Bank of Butte, Prudential Federal Savings and Loan and Bernice Howell, a companion of decedent, have no right, title or interest in the savings accounts. A hearing on an order to show cause was held November 14, 1975. The bank and savings and loan as-

sociation took no active part in the litigation stating they would comply with the final outcome. Bernice Howell, who cared for decedent just prior to his death, took the position she would have an interest only if executrix was successful in bringing the accounts into the estate.

Appellant produced a letter written December 1, 1966, by respondent and addressed to decedent. Appellant contended at the hearing that statements made in the letter constituted a renunciation by respondent of her interest in the joint savings accounts. In part, the letter stated:

"As I told you in my last letter, Mickey, your money is yours to do with what you want. I hope you don't feel an obligation to include me in your will . . ."

Upon conclusion of the hearing the District Court issued a temporary injunction prohibiting respondent from withdrawing any money from the accounts, pending final determination of the dispute.

Numerous interrogatories were exchanged by the parties. Motions for summary judgment were filed by both parties and on September 22, 1977, the District Court entered summary judgment in favor of respondent. This appeal followed.

The ultimate question to be decided is whether summary judgment was property granted.

Four contentions are urged by appellant to support her claim as executrix of the money in the savings accounts.

The primary contention is that a joint tenancy never existed between the decedent and respondent in the two savings accounts. The District Court should have considered evidence regarding the decedent's intent. Appellant was ready to present evidence at trial that decedent had directed respondent to distribute the money in the account to certain relatives if he should die before making a Will. Appellant argues the law in Montana involving joint bank accounts is unsettled as it applies to this case and summary judgment was improperly granted.

A joint interest is defined in section 67-308, R.C.M.1947:

"A joint interest is one owned by several persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants."

■ The essential characteristic of a joint tenancy is the right of survivorship. In *B. & B. Co. v. M. O. P. Co.* (1901), 25 Mont. 41, 70, 71, 63 P.825, this Court said:

". . . We cannot agree with the courts which hold that the legislature has power to convert existing joint tenancies into tenancies in common. The right of survivorship—the indispensable ingredient and characteristic of the estate, and not a mere expectancy or possibility, as for example, is the inchoate right of dower—accrues as a vested right when and as soon as the joint tenancy is created, and the legislature is without authority to divest or interfere with such right. A joint tenant cannot be so deprived of his property. Constitutional limitations, state and national, prohibit it . . ."

■ A joint bank account has a special attribute which allows either joint owner, by virtue of the contract with the bank, to acquire dominion over the entire account by drawing a proper order on the bank. Nevertheless, a joint bank account is otherwise subject to the same rules as other joint tenancies. *State Board of Equalization v. Cole* (1948), 122 Mont. 9, 195 P.2d 989. Either party can acquire the whole account either by withdrawing it during the lifetime of the co-owners or by survivorship.

*Cole* stood for the proposition that, in Montana, signing a signature card containing an agreement that the deposit is payable to either of the co-depositors or the survivor settles the question of donative intent to make a joint tenancy. Appellant cites an Arizona decision, *O'Hair v. O'Hair* (1973), 109 Ariz. 236, 508 P.2d 66, wherein it was held that the mere form of a bank account is not regarded as sufficient to establish the intent of the depositor to give another a joint interest in or ownership of it. We find the Montana rule represents a more reliable manner for determining questions

concerning the ownership of joint bank accounts. This should not be mistakenly understood to mean we have no concern for the depositor's intentions. Intention is clearly expressed on the face of the signature card. Additional evidence is unnecessary. Witness the signature card signed by decedent and respondent at The First National Bank of Butte, which is similar to that signed by them at the Prudential Federal Savings and Loan Association:

"The undersigned hereby open an account in your bank as joint tenants and not as tenants in common, and, upon the death of either or any of us, all monies then in this account shall be paid to the survivor or survivors as his, her, or their individual property. All monies hereafter deposited in this account shall likewise be as joint tenants and not as tenants in common. "You are hereby directed to honor checks or orders on this account signed by either or any of us, or the survivor or survivors of either or any of us."

The savings accounts became the individual property of respondent upon decedent's death. Her right of survivorship, which is the essential characteristic of any joint tenancy, cannot be defeated by the executrix of decedent's estate, in an attempt to satisfy general devises in the Will.

■ Appellant's secondary contention, in the event we find a joint tenancy was intended, is that respondent renounced her interest in the bank accounts by virtue of a letter written by her on December 1, 1966. The pertinent part of the letter is set forth above. In addition, appellant finds support for this contention in a dialogue that took place at the hearing on the order to show cause, between the court and respondent:

"THE COURT: Well, I will ask Mr. Geagan to issue a temporary injunction against the transfer of any of this property until you have had legal counsel and can make an appropriate appearance in response to this complaint that is here, they are contending in their Complaint that you have renounced.

A. By virtue of that letter, yes, it is a renunciation as I explained, and I have been ill, my cousin didn't know whether I was going to live or die before he did."

Respondent's statement in a letter expressing her appreciation for being named in a Will cannot be construed in any manner to amount to a renunciation of her interest in the bank accounts. The accounts are not mentioned in the letter. Nothing is said about the devise or from what source it is to be made. Respondent merely stated a fact that decedent's money was his to do with what he wanted. By no stretch of the imagination can it be said that respondent was informing decedent that she no longer desired to be a joint tenant of the bank accounts. As for respondent's dialogue with the District Court, appellant contends the statement by respondent constituted an affirmation of her prior renunciation. A prior renunciation, however, did not take place. Respondent became the sole owner of the bank accounts immediately upon the death of decedent. Therefore, it cannot be said the statement, made in response to the District Court's general statement concerning the nature of appellant's complaint, affirmed a renunciation that never took place, nor was it sufficient to divest respondent of her ownership rights in the accounts as sole survivor.

As a third alternative, appellant contends the bank accounts should be considered the subject of an involuntary trust and respondent be declared an involuntary trustee of the accounts for appellant's benefit. Section 86-210, R.C.M.1947, provides:

"*Involuntary trust resulting from fraud, etc.* One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other or better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

Appellant directs our attention to the case of *Opp v. Boggs* (1948), 121 Mont. 131, 193 P.2d 379, wherein this Court held that an involuntary trust to reconvey certain real property existed because of an oral agreement reached by the parties when the deed was transferred. The District Court had incorrectly refused to consider the agreement, finding it had to have been in writing in order to bind the parties. The agreement amounted to a trust to reconvey and this Court determined the trust had been violated and applied

Section 7887, Revised Codes 1935, which was the identical predecessor to section 86-210, R.C.M.1947.

Section 86-210, will be applied in situations where a person gains something by "wrongful act". In the *Opp* case, an oral agreement existed. There this Court imposed an involuntary trust upon defendant for wrongfully refusing to reconvey the property pursuant to the agreement. In the instant case, however, the signature cards represented the entire agreement between the parties. The District Court in *Opp* incorrectly refused to consider the oral agreement. The District Court in the instant case correctly refused to consider evidence of an oral agreement and followed the Montana rule which states the signature card settles the question of the parties' intent. The only "wrongful act" alleged by appellant is that respondent abandoned the confidences placed in her by decedent by asserting her right of survivorship. Having determined that agreements or confidences other than that evidenced by the signature card shall not be considered, as a matter of law, we find respondent committed no act which would justify declaring her an involuntary trustee of the bank accounts.

Finally, appellant advances the unsupported contention that decedent, by establishing the joint bank accounts, made a fraudulent conveyance of his property. If respondent takes by survivorship, decedent's estate has no means of paying the funeral, burial and monument expenses. This contention is totally without merit. Section 29-104, R.C.M.1947, provides:

"*Conveyances by insolvent.* Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent if fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

The joint bank accounts were created more than 11 years before decedent's death. The creation of the accounts did not place decedent's property beyond the reach of his creditors. It was his death that put the accounts out of their reach. Section 29-104, is totally inapplicable to these facts.

There being no genuine issue as to any material fact before the District Court, in light of the substantive law in Montana concerning joint bank accounts, summary judgment was properly granted the respondent.

Affirmed.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY and SHEA concur.