MR. JUSTICE WEBER
delivered the Opinion of the Court.
Plaintiffs appeal from the judgment of the Eighth Judicial District Court, Cascade County, which found defendant Donald W. Patten was entitled as joint tenant to three certificates of deposit and joint checking account funds. We affirm the judgment of the District Court.
The issue on appeal is whether Ella D. Patten created valid joint tenancies in a joint checking account and certificates of deposit payable to “Ella D. Patten or Donald W. Patten.”
*240 On December 13, 1965, Ella D. Patten (Ella) purchased with her own funds Certificate of Deposit No. 3379 from defendant First National Bank of Great Falls (First National) in the amount of $10,000. The certificate was issued in the name of “Ella D. Patten or Donald W. Patten . . . payable to said depositor, or, if more than one, to either or any of said depositors or the survivor or survivors. . . The signature card executed at the time of purchase was signed only by Ella. In place of the other joint tenant’s signature appeared notations stating “refused to obtain other signature” and “make sure of identification.”
On December 3, 1969, Ella purchased with her own funds two additional certificates of deposit, Certificate No. 12682 and Certificate No. 12683, each in the amount of $10,000. These certificates were also issued payable to “Ella D. Patten or Donald W. Patten” or the survivor. The signature cards were signed only by Ella.
From the date of purchase of these three certificates, until her death, Ella received all interest payable on the certificates. None of the certificates was physically delivered to Donald during Ella’s lifetime and until after Ella’s death, Donald had not seen the certificates. However, the certificates were delivered by Ella to a safe deposit box at Northwestern National Bank of Great Falls. Donald was a joint tenant in the box and his signature appears on the signature card. Prior to Ella’s death, only Ella had entered the safe deposit box, although Ella had told Donald to enter the box if something should happen to her. The certificates were located in the box at the time of Ella’s death.
On July 10, 1970, Ella opened checking account No. 5002-50152-1 at First National. The account was designated a joint tenancy account with right of survivorship. The account was in the name of “Patten, Ella D. or Donald W.” The joint account signature card was signed only by Ella. This account was still in existence at the time of Ella’s death, with a balance of $46,587.16. Only Ella had transacted business on the account prior to her death.
*241 Ella died on September 13, 1973. Soon thereafter, Donald went to Northwestern Bank of Great Falls and was granted access to the safe deposit box as one of the two named joint tenants, even though he had no key to the box. Donald removed the three certificates of deposit and later presented them for payment to Washington Federal Savings and Loan Association in Seattle, Washington. Washington Federal forwarded the certificates to First National for payment. First National remitted the proceeds plus accrued interest to Washington Federal for credit to the account of Donald W. Patten. On Donald’s signature, the checking account funds were also withdrawn from First National and received by Donald.
After two successful challenges to Ella’s wills by plaintiff Robert Patten, the District Court found Ella intestate and appointed a personal representative, plaintiff Merton Malek. See Patten v. Patten (1976), 171 Mont. 399, 558 P.2d 659; Estate of Patten (1978), 179 Mont. 299, 587 P.2d 1307. Plaintiffs now seek to recover $76,587.16, consisting of $30,000 from the three certificates and $46,587.16 from the joint checking account. The District Court found that the certificates and checking account were owned by Donald and Ella as joint tenants with the right of survivorship and that all funds were properly paid to Donald as survivor. Judgment was entered for defendants and plaintiffs appeal.
Appellants argue that Ella did not establish valid joint tenancies in the certificates or checking account. They argue that the absence of Donald’s signature on signature cards for the certificates and checking account and his lack of specific knowledge relating to the account and certificates precluded establishment of valid joint tenancies by contract or gift. We disagree.
In State Board of Equalization v. Cole (1948), 122 Mont. 9, 195 P.2d 989, and Casagranda v. Donohue (1978), 178 Mont. 479, 585 P.2d 1286, this Court applied a gift analysis to resolve disputes concerning ownership of similar assets. In both cases, we applied the rule that a written *242 agreement controls the issue of intent to make a gift:
“In this jurisdiction the signing of a signature card containing an agreement that the deposit was payable to either of the co-depositors or the survivor settled the question of the donative intent of the donor to make a gift in joint tenancy.” Cole, 122 Mont, at 15, 195 P.2d at 992, citing In re Sullivan’s Estate (1941), 112 Mont. 519, 118 P.2d 383 (Emphasis added.).
“Cole stood for the proposition that, in Montana, signing a signature card containing an agreement that the deposit is payable to either of the co-depositors or the survivor settles the question of donative intent to make a joint tenancy. Appellant cites an Arizona decision. . . wherein it was held that the mere form of a bank account is not regarded as sufficient to establish the intent of the depositor to give another a joint interest in or ownership of it. We find the Montana rule represents a more reliable manner for determining questions concerning the ownership of joint bank accounts. This should not be mistakenly understood to mean we have no concern for the depositor’s intentions. Intention is clearly expressed on the face of the signature card. Additional evidence is unnecessary.” Casagranda, 178 Mont, at 483-84, 585 P.2d at 1288 (Emphasis added.).
In Anderson v. Baker (1982), 196 Mont. 494, 641 P.2d 1035, we held that where a depositor during her lifetime raised the issue of ownership of funds in a joint account, the statements on the signature card were not conclusive and evidence of intent to terminate the joint tenancy was admissible. The factual basis of the holding in Anderson was the depositor’s written demand for the return of passbooks and certificates and a subsequent lawsuit filed by the depositor. 196 Mont, at 497, 641 P.2d at 1036. This case presents no similar facts. Ella did nothing during her lifetime to demonstrate an intent to terminate the joint tenancies.
In this regard, appellants place great emphasis on the fact that Donald did not sign the signature cards and that *243 he had no specific knowledge of the accounts. They reason that Ella’s failure to obtain Donald’s signature or tell him of the accounts demonstrates a lack of intent on her part to make a gift. However, this approach places greater emphasis on an omission than upon an unequivocal act clearly expressing her intent. These facts are insufficient to show an intent not to give Donald a joint interest in the certificates and account. These facts are also insufficient to show an intent to terminate existing joint tenancies as in Anderson.
We hold that absent evidence of intent to the contrary, the joint account agreements and signature cards signed by Ella Patten establish her intent to make a gift.
Appellants further attempt to distinguish Cole and Casagranda with respect to the gift delivery requirement. They contend that because Ella refused to obtain Donald’s signature or inform him regarding the account and certificates, she failed to relinquish control over them. However, the delivery requirement is met if the donor creates in the donee a co-equal right to exercise control over the deposits. Cole,'122 Mont, at 16, 195 P.2d at 993. Ella deposited the money under agreement that Donald had a right to withdraw the money or cash the certificates. In Cole, we stated that it is irrelevant that the right might prove to be of no pecuniary value. “ ‘No act of [the donor] could defeat the right, although she might render it of no value.’ ” 122 Mont, at 16, 195 P.2d at 993, quoting Burns v. Nolette (1929), 83 N.H. 489, 144 A. 848 (Emphasis added.). Donald had a right to exercise control over the account and certificates, even though Ella may have rendered it valueless by failing to inform Donald of the details.
Most authorities take the position that the opening of a joint account with an agreement such as the one signed by Ella Patten is sufficient to satisfy the delivery requirement, so long as done with the requisite intent. Brown on Personal Property 183 (3d ed. 1975). We recognized that a formal or informal written agreement is sufficient to accomplish delivery, in Faith Lutheran Retirement Home v. Veis *244 (1970), 156 Mont. 38, 473 P.2d 503. There, a valid gift was found where the donor executed an instrument saying he wished to give a certain sum of money to the donee and that it could be collected from his estate if not demanded sooner or paid, 156 Mont, at 39-40, 473 P.2d at 504. We reasoned that writings serve the same purpose as actual delivery in an oral gift: preclusion of unfounded claims and authentication of the gift. 156 Mont, at 44, 473 P.2d at 506.
Ella Patten’s intent was clearly expressed on the face of the deposit agreements. These agreements are sufficient to accomplish her purpose. Moreover, signature cards are protective devices employed by banks to assure that the person transacting business with the account is actually the person named in the deposit agreement. So long as Donald was designated a joint tenant in the deposit agreement, lack of his signature on the card does not affect his rights as set forth in the deposit agreement.
Appellants have presented no authority for the proposition that a donee must sign the document which creates a gift or must know the details of the gift. The general rule is that acceptance of a gift is presumed. See Stagg v. Stagg (1931), 90 Mont. 180, 188, 300 P. 539, 543; 39 Am.Jur. 2d Gifts Sections 34 and 35. Donald did nothing to repudiate the gifts. We find no legal significance in the absence of Donald’s signature on the signature cards or lack of specific knowledge concerning the account and certificates.
Stringent application of gift theory elements as urged by appellants ignores the reality of modern practice relating to joint and survivorship bank accounts. Modern commercial practice relies heavily upon contractual theory rather than gift theory. The Legislature has recognized the validity of joint bank accounts and certificates of deposit based upon contractual principles. See Section 72-1-110, MCA and comment; Section 32-1-442, MCA. The Legislature has recognized the validity of the contractual relationship involved in these transactions by relieving banks of liability for paying the proceeds of such accounts according to the terms of *245 the contract:
“Joint deposit's - survivorship. (1) When a deposit has been made or shall hereafter be made in any bank transacting business in this state in the names of two or more persons, payable to either or payable to either or the survivor, or any survivor, such deposit, or any part thereof, or any interest or dividend thereon, may be paid to any of said persons, whether the other or others be living or not. The receipt or acquittance of the person so paid shall be a valid and sufficient release or discharge to the bank for any payment so made.
“(2) The term ‘deposit’ shall include certificates of deposit heretofore or hereafter issued.” Section 32-1-442, MCA.
While this statute does not expressly vest title to account proceeds, it approves payment to the surviving joint tenant. This is precisely the position of First National in this case, which has delivered funds to Donald in accordance with the contracts.
A case emphasizing this contract relationship is Estate of Fanning (Ind. 1975), 333 N.E.2d 80. The depositor, with her own funds, purchased certificates of deposit as joint tenant with another person who signed nothing and knew nothing of the certificates’ existence until they were found in a safe deposit box after the depositor’s death. The Indiana Court applied the Restatement of Contracts provision:
“ ‘(1) Where performance of a promise in a contract will benefit a person other them a promissee, that person is . . .
“ ‘(a) A donee-beneficiary, if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promise ... is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed nor asserted to be due from the promisee to the beneficiary. . . .’ “ Estate of Fanning, 333 N.E.2d at 83, quoting Restatement of Contracts Section 133 (1932) (Emphasis added.).
The Indiana Court expressly found that the donee’s lack of *246 knowledge of the certificates did not affect the validity of the gift. 333 N.E.2d at 83-84.
The Court concluded that:
“We have adopted the contract theory instead of the gift theory. . . . The elemental requirements of the gift theory tend to frustrate the intent of the donor. Some of the requirements - in particular the delivery requirement - defy the usual donor’s inclination. Other jurisdictions have adopted the contract theory. We are impressed with and persuaded by the apparent success of the contract theory in these jurisdictions.” 333 N.E.2d at 85-86 (Footnotes omitted.) (Emphasis added.).
We note that the Legislature has essentially adopted the contract theory. We approve the contract theory as described in Estate of Fanning. This theory provides an additional basis upon which to affirm the District Court’s judgment in this case.
Further, the certificates of deposit were kept in a safe deposit box in the name of Ella or Donald Patten. Donald had signed the signature card for the safe deposit box. Section 70-1-308, MCA provides:
“Safe deposit box - joint tenancy. When so specified in the agreement granting for a term of time the right in two or more persons to use or occupy any safe or box, commonly referred to as a safe deposit vault or box for the safekeeping of valuables, such interest and estate created in the grant shall be a joint tenancy in such vault or box and pass to the survivors and survivor upon the death of one or more of the joint tenants with right in such survivors and survivor to have access to and possession of such vault or box and the contents thereof under the terms of the agreement.” (Emphasis added.)
This statute makes it clear that the contents of the box are property of the surviving joint tenant. The statute places express reliance on the agreement relating to the box, not upon who has the key. This provision, together with the fact that the certificates were in the name of “Ella D. Pat *247 ten or Donald W. Patten” establishes Donald’s ownership of the certificates.
We hold that Ella Patten created joint tenancies in favor of Donald in the checking account and certificates of deposit under gift or contract theory. We therefore affirm the judgment of the District Court.
MR. JUSTICES SHEEHY and GULBRANDSON and The Honorable DOUGLAS G. HARKIN, sitting for MR. JUSTICE MORRISON, concur.