No. 92-606

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

FILED

JUN 2 1 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

IN THE MATTER OF THE ESTATE
OF VERN A. SHAW, a/k/a VERN SHAW,
Deceased.

APPEAL FROM:   District Court of the Fifth Judicial District,
               In and for the County of Madison,
               The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Gene I. Brown, Landoe, Brown, Planalp & Braaksma,
                Bozeman, Montana

        For Respondent:

                Suzanne A. Nellen, Bozeman, Montana

                                Submitted on Briefs:  May 13, 1993

                                          Decided:  June 21, 1993

Filed:

                                    Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from a Fifth Judicial District Court, Madison County, denial of a petition for a restraining order in the matter of the Estate of Vern A. Shaw, a/k/a Vern Shaw. We remand for further proceedings consistent with this opinion.

There are two issues on appeal: (1) whether the word "or" between the names on a brand certificate creates a joint tenancy and (2) whether the claim of petitioner/appellant is subject to the equitable doctrine of laches.

Vern and Erma Jean Shaw owned and operated a cattle ranch near Cardwell, Montana. Erma passed away on November 3, 1990, and Vern passed away on April 24, 1991. In Vern's last will and testament, he bequeathed his entire estate to his wife and, if she predeceased him, to his four children in equal shares. Ronald Vern Shaw, Vern and Erma's son, and one of their daughters, Carol Marie Patrick, were named as co-personal representatives of his estate at the time of the informal probate. The two other daughters, Verna Louise Poore and Beverly Jean Roark, consented to the appointment.

However, Beverly later filed a petition for an order restraining final distribution of the estate on October 27, 1992. She contended that Vern owned a property interest in ranch livestock and a checking account at the Whitehall State Bank and that his interest in such property was to be divided equally among his children at the time of his death in accordance with his will.

In her petition, Beverly asserted that Ron was claiming the property as his own because he believed the livestock and the

2

checking account were held in joint tenancy and that he was the surviving joint tenant. At the time of the hearing, Beverly had abandoned her claim concerning the checking account but sought a determination that the livestock were held in tenancy in common and therefore, should pass to the four children under Vern's will. Other facts will be provided as necessary.

"Our standard of review relating to conclusions of law...is whether the tribunal's interpretation of the law is correct." Steer Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-475, 803 P.2d 601, 603.

ISSUE I. -- JOINT OWNERSHIP VS. TENANCY IN COMMON

In the instant case, petitioner claims that the livestock are owned by the siblings as tenants in common because there was not a clear indication that the title created by the brand certificate was a joint tenancy. The respondent, however, contends that the use of the word "or" between the names on the brand certificate "creates a joint tenancy interest in the brand and, therefore, a joint tenancy interest in the cattle bearing such brand."

In support of his argument, the respondent cites § 81-3-105, MCA, which states that "the certificate is also prima facie evidence that the person entitled to use the mark or brand is the owner of all animals on which it appears" and that he is presumptively the sole owner of the cattle. We disagree with Ron's conclusion that the cited code section and the use of the word "or" between the names on the certificate creates a joint tenancy.

Section 81-3-105, MCA, provides:

3

**Right of owner of recorded brand.** A person in whose name a mark or brand is recorded is entitled to the exclusive use of the mark or brand on the species of animal and in the position designated in the record. A copy of the record certified by the department is prima facie evidence of this right, and the certificate is also prima facie evidence that the person entitled to use the mark or brand is the owner of all animals on which it appears in the position and on the species of animal stated in the certificate.

An official brand certificate for the Shaw cattle was issued on October 24, 1985 in the name of Vern A. or Erma Jean or Ronald V. Shaw. (Emphasis added.) In its order on the petition for a restraining order, the trial court stated that "[t]he certificate was issued in this form at the special personal request of the now deceased, Vern Shaw, his now deceased wife, Erma Shaw, and Ronald V. Shaw." The court further concluded that "[t]he proceeds of all livestock sold went into the mentioned survivorship banking accounts, ownership of which is not now in question. The entire ranching operation was conducted under the survivorship concept, i.e. vehicles, operating accounts, etc." The court noted in its supporting memorandum, however, that it did not believe that the single conjunction "or" and nothing else created a survivorship tenancy; or that, in using that term, the decedent and his wife intended to disinherit their other three children; or that § 81-3-105, MCA, did anything more than create a tool of marketing and identification.

Section 81-3-105, MCA, states that the person whose name is on the brand certificate is entitled to the exclusive use of the brand and is the prima facie owner of the animals on which the brand appears. While placing the name of a person on the brand

4

certificate creates, prima facie, an ownership interest in that person in the brand and in the livestock so branded, the statute does not address the nature of interest created, nor does it resolve the question of ownership when one of the co-owners dies. Accordingly, § 81-3-105, MCA, is not determinative of the ownership of the cattle at issue.

Ron also argues that his position should be upheld on the basis of our decision in Marshall v. Minlschmidt (1966), 148 Mont. 263, 419 P.2d 486, which, at first blush, appears to resolve this ownership issue. A close reading of that case will, however, indicate that such reliance is misplaced.

In that case, Marshall, the administrator of the estate of the deceased, Henry Verne Field, brought an action against the surviving co-owners, the decedent's sister and brother-in-law, to recover partnership assets which were transferred by Field shortly before his death. The assets consisted of the decedent's bank account and an interest in cattle owned by the decedent and the defendants/appellants, William L. Minlschmidt and Etta M. Minlschmidt, the decedent's brother-in-law and sister. The brand certificate issued by the Montana Livestock Commission stated the ownership of the partnership brand as "Wm. L. or Etta M. Minlschmidt or Vern Field." However, during his last illness, Vern transferred the brand to the names of "Wm. L. or Etta M. Minlschmidt." Marshall, 419 P.2d at 489.

The pertinent issue considered by this Court in Marshall was whether there was "sufficient evidence for the lower court to

5

conclude that plaintiff-respondent, as administrator, was the owner of one-half of the cattle herd, rather than the one-third interest indicated by the recorded brand?" Marshall, 419 P.2d at 488.

This Court noted that the District Court had received testimony from the decedent's son and sole heir-at-law and the son's wife that the deceased told them of his one-half interest in the partnership cattle, and that, on his death, the one-half interest was to go to the son. The District Court had also taken testimony from William Minlschmidt about the intent behind the use of the word "or" on the brand certificate. Minlschmidt stated that he used 'or' because "I have used that all my life, and 'or' if anything happens to one or the other it goes to the other party." Marshall, 419 P.2d at 489.

Without further analysis, we then stated, that "[t]he recorded brand signifies a joint interest in the brand, the several persons having equal shares," citing § 67-308, RCM 1947, the predecessor to § 70-1-307, MCA, discussed hereafter, and quoting from In State Board of Equalization v. Cole (1948), 122 Mont. 9, 195 P.2d 989. Marshall, 419 P.2d at 489.

We then went on to cite § 46-606, RCM, (now § 81-3-105, MCA), which states a brand certificate is prima facie evidence that the person who owns the brand is the owner of all the animals which have that brand. We continued, "A corollary to this statutory rule, that prima facie, one is the owner of cattle bearing his recorded brand is that prima facie the owners of the recorded brand have the same interest in the cattle bearing their brand as is

6

indicated by the brand record." Marshall, 419 P.2d at 490.

We then concluded that "[t]his *prima facie* one-third joint ownership of the cattle must be contradicted and overcome by other evidence." Marshall, 419 P.2d at 490. We observed that the trial court was persuaded by the testimony of the decedent's son and daughter-in-law along with other testimony and facts that "...the *prima facie* one-third ownership evidenced by the brand record...." was overcome. The district court concluded that the respondent administrator owned a one-half interest in the partnership cattle, and we affirmed.

Marshall is not properly cited for the proposition that simply using the word "or" between the names of the owners on a brand certificate creates a joint tenancy between or among such persons. First, the opinion does not analyze the meaning of the word "or" as it appears on the brand certificate. The trial court simply accepted the witness' testimony that the use of "or" was meant to create a joint interest in the cattle and inquired no further. Second, the Marshall case cited, but did not discuss, the effect of then § 67-308, RCM, which is virtually the same as our present day § 70-1-307, MCA, and which requires that to create a joint interest or tenancy, an *express declaration* is required. Third, Marshall does not clearly delineate the concepts of joint tenancy and tenancy in common.

In fact, it can be argued that what is termed a "joint interest" in the opinion is actually a tenancy in common. Had the use of the word "or" on the brand certificate actually created a

7

joint interest, then the right of survivorship would apply and the Minlschmidts would have been the sole owners of the cattle and the administrator would not have owned any interest. If the deceased had an interest in common, he would only have passed a 1/3 interest in the cattle to his son. As it was, this court affirmed the lower court's ruling that the administrator owned a 50% interest in the cattle, on the basis of extrinsic testimony that the decedent owned a 50% partnership interest in the cattle.

Our discussion in Marshall concerning joint tenancy was dicta and did not actually determine the issue before the court. To the extent that Marshall is cited for the proposition that simply using the word "or", without more, on a brand certificate creates a joint tenancy in the ownership of the livestock so branded, we overrule the case on that point.

Our clarification of Marshall makes it necessary to clarify another opinion, First Westside Nat. Bank of Gr. Falls v. Llera (1978), 176 Mont. 481, 580 P.2d 100, which relied on Marshall. In Llera, we concluded that Allen Llera owned an equal share with right of survivorship interest, along with his mother, in the automobile at issue in the action. While acknowledging that there is little or no statutory authority for the proposition that an "and/or" title is one creating a joint tenancy with right of survivorship, we assumed, on the basis of the wide acceptance of the phrase as creating a joint tenancy and on the basis of Marshall that the use of the words 'and/or' on an "ownership document showing title in two or more persons ... creat[ed] a joint tenancy

8

estate with right of survivorship."

Llera arrived at the proper conclusion -- Llera and his mother did own the automobile as joint tenants with a right of survivorship -- using incorrect reasoning and authority. We concluded that Llera and his mother were joint tenants of the automobile because of the language "and/or" in the ownership document. While referring to the statutes defining joint tenancy and tenancy in common, we did not give effect to the clear and unambiguous requirements of §§ 67-308 and 67-313, RCM, (now §§ 70-1-307 and 70-1-314, MCA, respectively) which mandated an express declaration to create a joint tenancy.

We should have concluded that the automobile was owned in joint tenancy because of § 53-107, RCM 1975, (now § 61-3-202(3), MCA), which states, as to motor vehicles:

> When the names and addresses of more than one owner who are members of the same immediate family are listed on the certificate of ownership, joint ownership with right of survivorship, and not as tenants in common, is presumed.

Allen Llera and his mother Edith Tynes were listed as the owners of the automobile in question and according to § 53-107, RCM, would be presumed to own the automobile as joint tenants with right of survivorship. This Court should have concluded that Allen Llera owned the vehicle as a joint tenant because of § 53-107, RCM, not because of the Marshall decision or because of the wide acceptance of "and/or" as creating joint tenancies.

To the extent that Llera stands for the proposition that simply using the words "and/or" on a document of ownership creates

9

a joint tenancy, we hereby overrule Llera on that point.

We appreciate the frustration of the District Court and counsel in the instant case in their attempt to apply the confusing and sometimes contradictory case law on joint tenancy. We take this opportunity to clarify that law. In the absence of more specific statutes to the contrary §§ 70-1-306, 70-1-307 and 70-1-314, MCA, control the creation of joint tenancies. Section 70-1-307, MCA, provides:

> A joint interest is one owned by several persons in equal shares by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy or when granted or devised to executors or trustees as joint tenants. (Emphasis added.)

We note under that statute, a joint interest is the same as a joint tenancy. Section 70-1-314, MCA, provides:

> Every interest created in favor of several persons in their own right, including husband and wife, is an interest in common unless acquired by them in partnership for partnership purposes or unless declared in its creation to be a joint interest, as provided in 70-1-307. (Emphasis added.)

Both of these statutes are clear and unambiguous and support the rule that simply using the word "or" or the words "and/or" in a document of title, conveyance or ownership, without more, does not create a joint tenancy. A joint tenancy is created by an express declaration that the parties are creating a joint tenancy or joint interest.

As noted, there are exceptions to the general rule stated above, such as the automobile ownership statute, § 61-3-202(3), MCA, which provides that motor vehicles owned by more than one member of the same immediate family are presumed to be owned in

10

joint tenancy, not a tenancy in common. In those cases, the specific statute controls over the more general statutes on the same subject. Matter of Williams (1985), 219 Mont. 6, 9, 709 P.2d 1008, 1010. However, § 81-3-105, MCA, cited earlier, is not such a statute for the reasons aforementioned.

In the instant case, there was no express declaration that the parties were creating a joint tenancy with right of survivorship in the brand and cattle, nor was there any indication that the brand and cattle were to be owned by a partnership. Accordingly, under §§ 70-1-306, 70-1-307 and 70-1-314, MCA, Ron, his father and his mother each owned an undivided 1/3 interest in the Shaw brand and in the cattle with the brand as tenants in common. As both parents are now deceased, the decedent's undivided interest in the brand and cattle must be distributed among the four children pursuant to the will of Vern Shaw. The remaining 1/3 interest in the brand and cattle is solely owned by Ron.

Since the cases were cited by the parties in their briefs, we will also discuss two recent cases, University of Montana v. Coe (1985), 217 Mont. 234, 704 P.2d 1029; and Seman v. Lewis (1992), 252 Mont. 508, 830 P.2d 1294, both of which involved bank accounts. In Coe, a student (Coe) defaulted on his student loans and the University obtained a partial summary judgment against him for the sum borrowed. The University attempted to levy against Coe's savings account. The signature card for the account was in the name of "Tammerly D. Coe or Mark D. Coe" and the "joint" box on the signature card was checked. (Emphasis added.) Coe, 704 P.2d at

1031.

We concluded, however, on the facts of the case, that the savings account was owned as tenancy in common and that the University was entitled to one-half of the total amount levied against the account, because there was no clear indication on the signature card that the Coes intended to create joint tenancy with survivorship interests in the account. Coe, 704 P.2d at 1033.

In that respect we distinguished the facts in Coe from those in Casagranda v. Donahue (1978), 178 Mont. 479, 585 P.2d 1286, wherein the bank signature card did contain an express declaration that the parties intended to create a joint tenancy with rights of survivorship and not a tenancy in common.

In Seman v. Lewis (1992), 252 Mont. 508, 830 P.2d 1294, we reached a conclusion opposite to that of Coe on similar facts. However, the Seman Court concluded that there was an uncertainty about the intention of the parties concerning ownership of the savings account at issue, co-owned by Gary Seman or Judy Lewis at Seman's death.

Even though the signature card for the account stated "Gary Seman or Judy Lewis," and they had chosen a "joint account," by checking the appropriate box, the card did not indicate a clear intent to create a joint tenancy. Ruling that the mere use of the word "joint" created uncertainty, the court then elicited testimony intended to supplement Lewis' claim that Gary Seman intended her to receive the funds in the account upon his death and concluded that the account was in joint tenancy.

12

We stated that extrinsic testimony was necessary to clarify the uncertainty and to determine the intent of the account owners which was the "determinative factor" in that case. We went on to point out that "...[w]hen third party rights are involved, extrinsic evidence is inadmissible if the written agreement is certain and clear...[and that] [i]n such cases, the intent of the parties must be gleaned from the signature card alone." Seman, 830 P.2d at 1296-1297.

In Seman we distinguished the acceptance of extrinsic evidence from the refusal of such evidence in Coe on the basis that in the latter case the evidence was offered to contradict, rather than supplement, the uncertain terms of the signature card, as in the former case.

As Justice Gray pointed out in her dissent in Seman, the more appropriate analysis of the case, and presumably similar cases, requires the application of the statutory requirements of § 70-1-307, MCA, rather than the rules of contract interpretation. Justice Weber's dissent in Coe makes the same point.

The common problem in both Coe and Seman points up the necessity that the parties expressly declare the creation of a joint tenancy or joint interest in their instrument of title or transfer so as to obviate the interpretational issues that ensue when the law is not followed.

Without attempting to reconcile all of the various cases dealing with the creation of joint tenancies that have come before this Court, we hold as follows:

13

1. The creation of a joint tenancy (same as joint interest) in property is by Montana statute. Sections 70-1-307 and 70-1-314, MCA, mandate that if parties want to create a joint tenancy (same as joint interest) in property, they must make an express declaration that they intend to create a joint tenancy or joint interest. Simply using words such as "or" or "and/or" without expressly using the words "joint tenancy", "joint tenancy with right of survivorship" or "joint interest" will not suffice to create a joint tenancy, absent a specific statute to the contrary.

2. In the event the parties do not expressly declare that the ownership interest created in the instrument of title or transfer is a joint tenancy or joint interest or a partnership interest, then a tenancy in common or an interest in common will be created.

### ISSUE II. -- LACHES

Respondent requests that we hold that Beverly is estopped from claiming an interest in the brand and cattle because of the equitable doctrine of laches. The District Court did not rule on this issue. Inasmuch as this case is being remanded, the District Court may rule on this issue in further proceedings if presented on remand.

REMANDED for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

14

_John Conway Harrison_

_Terry Trieweiler_

_Karla M. Gray_

_William E. Hunt Sr._

_Jim Rice_

Justices

June 21, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Gene I. Brown
LANDOE, BROWN, Planalp & Braaksma
P.O. Box One
Bozeman, MT  59771-0001

E. Edwin Eck
BROWN, GERBASE, Cebull, Fulton, Harmon & Ross
P.O. Drawer 849
Billings, MT  59103

SUZANNE A. NELLEN
Attorney at Law
1800 West Koch - Suite 5
Bozeman, MT  59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy