NO. 94-209

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN THE MATTER OF THE ESTATE
OF SYLVESTER L. LAHREN,

Deceased.

APPEAL FROM: District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Byron L. Robb, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Joseph B. Gary and Calvin L. Braaksma, Landoe,
Brown. Planalp & Braaksma, Bozeman, Montana

For Respondents:

Dan L. Spoon, Reep, Spoon & Gordon, Missoula,
Montana; Kevin S. Jones, Christian & Samson,
Missoula, Montana

Submitted on Briefs: September 8, 1994

Decided: December 13, 1994

Filed: DEC 13 1994

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice James C. Nelson delivered the Opinion of the Court

This is an appeal from a Sixth Judicial District Court, Park county, order determining that the certificates of deposit at issue were held in joint tenancy with right of survivorship by Sylvester L. Lahren's (S.L. Lahren's) granddaughter, Signe Lahren (Signe) We affirm in part and reverse in part.

## ISSUES

There are two issues on appeal:

I.  Did the District Court err in determining that the bank certificates of deposit, which designate one depositor and one "P.O.D." beneficiary, are joint tenancy instruments?

II. Did the District Court err in determining that the P.O.D. designations on the bank certificates of deposit act to transfer the certificates outside of the probate estate at the time of the depositor's death as a non-testamentary transfer?

## FACTUAL AND PROCEDURAL BACKGROUND

S.L. Lahren died testate on June 25, 1992.  He bequeathed the residue of his estate, less items of personal property which he had specifically devised, to three of his four sons, namely Larry, Daniel and S.L. Lahren Jr.  However, the bulk of S.L. Lahren's estate consisted of four bank certificates of deposit (CDs) at American Bank, formerly known as First Security Bank.

The four CDs include: Certificate Number 32989, issued on January 15, 1985, Certificate Number 33220, issued on June 15, 1989, Certificate Number 33493, issued on March 9, 1990, and Certificate Number 34197, issued on October 8, 1991.  On three of

2

the four CDs, the depositor was listed as S.L. Lahren P.O.D. Signe Lahren. The fourth CD named as depositor, S.L. or Signe Lahren. Signe is not only S.L. Lahren's granddaughter, but also the personal representative of S.L. Lahren's estate.

As stated in her memorandum in support of her motion for an order determining that the CDs were joint tenancy property, Signe originally retained legal counsel from Livingston as recommended by one of her uncles. Counsel informed her that he believed that the CDs were estate property. Signe sought a second opinion on the status of the CDs and came to believe through independent review and evaluation that the CDs were actually property held in joint tenancy with right of survivorship.

On June 21, 1993, with her new counsel, Signe filed her motion for an order determining whether the CDs were joint tenancy property. On June 23, 1993, the District Court filed an order requesting additional briefs on the respective positions of the parties regarding the status of the CDs at issue. Appropriate briefs were filed and on February 22, 1994, the District Court determined that the CDs were joint tenancy property. The order was certified as final and appealable on the joint tenancy question. This appeal followed.

## ISSUE I - JOINT TENANCY

Appellants argue that the District Court erred in determining that the three CDs at issue were joint property with right of survivorship. (The fourth CD which named the depositor as, S.L. Lahren or Signe Lahren, is not at issue on this appeal.) They

3

contend that Signe did not have a present interest in the CDs and therefore, she had no joint tenancy or joint interest in the CDs.

In a fairly recent opinion, Matter of Estate of Shaw (1993), 259 Mont. 117, 855 P.2d 105, we provided some guiding principles for determining whether property is held in joint tenancy. In Shaw, we held that the creation of a joint interest or joint tenancy in property is by Montana statute. Shaw, 855 P.2d at 111. "Sections 70-1-307 and 70-1-314, MCA, mandate that if parties want to create a joint tenancy (same as joint interest) in property, they must make an express declaration that they intend to create a joint tenancy or joint interest." Shaw, 855 P.2d at 111. (Emphasis added.) Absent an express declaration of intent that the ownership interest be held in joint tenancy or joint interest, then a tenancy in common or interest in common is created. Shaw, 855 P.2d at 111.

Section 70-1-307, MCA, defines joint interest as:

> A joint interest is one owned by several persons in equal shares by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy or when granted or devised to executors or trustees as joint tenants.

Section 70-1-314, MCA, explains how an interest in common is created:

> Every interest created in favor of several persons in their own right, including husband and wife, is an interest in common unless acquired by them in partnership for partnership purposes or unless declared in its creation to be a joint interest, as provided in 70-1-307.

We are left to determine whether S.L. Lahren made an express declaration that the property was to be held in joint tenancy or

joint interest, thus creating a joint tenancy or joint interest in the property. The certificates state on the front in printed form:

> 'You' means the depositor(s) named above....If more than one of you are named above, you will own this certificate as joint tenants with right of survivor-ship, (and not as tenants in common.) (You may change this ownership by written instructions.) We will treat any one of you as owner for purposes of endorsement payment of principal and interest, presentation (demanding payment of amounts due), transfer and any notice to or from you. Each of you appoints the other as your agent, for the purposes described above. We will use the address on our records for mailing notices to you. You cannot transfer or assign this certificate or any rights under it without our written consent.

Signe argues that this is the express declaration required under Shaw to create a joint tenancy or joint interest. However, also included on the face of the CDs is the written designation under depositors which states "S.L. Lahren P.O.D. Signe Lahren." The P.O.D. designation is not the same as a designation that the property is held in joint tenancy or joint interest. The dissimilarity in the two designations makes the document ambiguous. In Shaw, we stated unequivocally that in the absence of an express and unambiguous declaration, no joint tenancy or joint interest is created. Therefore, in the instant case, no joint tenancy or joint interest was created because there was no express and unambiguous declaration creating a joint interest on the documents.

Moreover, "the essential characteristic of a joint tenancy is the right of survivorship. The right of survivorship-the indispensable ingredient and characteristic of the estate, and not a mere expectancy or possibility, as for example, is the inchoate right of dower-accrues as a vested right when and as soon as the

5

joint tenancy is created...."   Casagranda v. Donahue (1978), 178 Mont. 479, 483, 585 P.2d 1286, 1288.   (Citation omitted.)  A joint interest or joint tenancy, then, assumes a present interest in the property.

A P.O.D. designation provides that the beneficiary receives an interest in the CD only at the death of the depositor.   See Official Comments to §§ 72-6-211 and 213, MCA, Annotations.   The P.O.D. certificate of deposit is akin to an insurance policy - the proceeds cannot be claimed by the beneficiary until death.  At any time before the depositor's death, the depositor can change the beneficiary or withdraw the account and use the funds.   However, the P.O.D. beneficiary has no such right.  See Official Comments to §§ 72-6-211 and 213, MCA, Annotations.   Therefore, a P.O.D. designation does not entitle the beneficiary to a present interest in the CDs and accordingly, the accounts cannot be held in joint tenancy or as a joint interest.

Finally, the face of the documents contain a pre-printed statement which provides that the CDs are owned in joint tenancy but the written designation of "S.L. Lahren P.O.D. Signe Lahren" indicates a different status of ownership.  Sections 1-4-105 and 28-3-205, MCA, state that when an instrument contains partly written words and partly language in pre-printed form, the written words control the pre-printed form.   In the instant case, the written words which designate a P.O.D. beneficiary would control over the pre-printed form purporting to create a joint tenancy or joint interest in the CDs.

6

We hold that, because there was no express and unambiguous declaration that the instrument be held in joint tenancy or joint interest, and because Signe Lahren held no present interest in the subject CDs while S.L. Lahren was alive, no joint tenancy or joint interest was created in the CDs. Signe Lahren is not entitled to the proceeds of the CDs at issue under a theory of joint interest or joint tenancy. Accordingly, we reverse the District Court on this issue.

## ISSUE II - P.O.D. DESIGNATION

Appellants also argue that the P.O.D. designation on the three CDs was invalid. They assert that the statutes which authorize P.O.D. designations, §§ 72-6-201 through 211, MCA, were not effective until October 1, 1993, long after the CDs were purchased, S.L. Lahren died and the estate was probated. They further contend that the statute was not retroactive and therefore, the P.O.D. designation is an invalid attempt at a non-testamentary transfer.

Signe counters that the non-testamentary transfer of the CDs by the P.O.D. designation was valid under § 72-1-110, MCA. She states that at the time the CDs were issued and S.L. Lahren died, and the estate was probated, § 72-1-110, MCA, controlled the disposition of the CD proceeds because the CDs were "deposit agreement[s]."

We agree with Signe and note that although the Montana Probate Code was extensively modified and revised in 1993, § 72-1-110, MCA, remains viable and substantially unchanged in the 1993 revised code. Section 72-1-110(1) and subsection (1)(a), MCA, provide:

7

> **Instruments not invalidated by code. (1) Any** of the following provisions in an insurance policy, contract of employment, bond, mortgage, promissory note, deposit agreement, pension plan, trust agreement, conveyance, or any other written instrument effective as a contract, gift, conveyance, or trust is deemed to be nontestamentary, and this code does not invalidate the instrument or any provision:
>
> (a) that money or other benefits theretofore due to, controlled or owned by a decedent shall be paid after his death to a person designated by the decedent in either the instrument or a separate writing, including a will, executed at the same time as the instrument or subsequently....

The statute was revised by the 1993 Legislature and now reads:

> **Nonprobate transfers on death.** (1) A provision for a nonprobate transfer on death in an insurance policy, contract of employment, bond, mortgage, promissory note, certificated or uncertificated security, account agreement, custodial agreement, deposit agreement, compensation plan, pension plan, individual retirement plan, employee benefit plan, trust, conveyance, deed of gift, marital property agreement, or other written instrument of a similar nature is nontestamentary. This subsection includes a written provision that:
>
> (a) money or other benefits due to, controlled by, or owned by a decedent before death must be paid after the decedent's death to a person whom the decedent designates either in the instrument or in a separate writing, including a will, executed either before or at the same time as the instrument or later....

Section 72-6-111, MCA, (1993).

Essentially, the statute remains the same, and at all times applicable, provided the authority to conclude that the P.O.D. designation on the face of the CDs serves to create a valid non-testamentary transfer. As stated in the Official Comments to § 72-6-111, MCA,

> This section is a revised version of former Section 6-201 [72-1-110, repealed 1993] of the original Uniform Probate Code, which authorized a variety of contractual arrangements that had sometimes been treated as testamentary in prior law. For example, most courts treated as testamentary a provision in a promissory note

8

that if the payee died before making a payment, the note should be paid to another named person; or a provision in a land contract that if the seller died before completing payment, the balance should be canceled and the property should belong to the vendee. These provisions often occurred in family arrangements. The result of holding such provisions testamentary was usually to invalidate them because not executed in accordance with the statute of wills. On the other hand, the same courts for years upheld beneficiary designations in life insurance contracts. The drafters of the original Uniform Probate Code declared in the Comment that they were unable to identify policy reasons for continuing to treat these varied arrangements as testamentary. The drafters said that the benign experience with such familiar will substitutes as the revocable inter vivos trust, the multiple-party bank account, and United States government bonds payable on death to named beneficiaries all demonstrated that the evils envisioned if the statute of wills were not rigidly enforced simply do not materialize. The Comment also observed that because these provisions often are part of a business transaction and are evidenced by a writing, the danger of fraud is largely eliminated.

Because the modes of transfer authorized by an instrument under this section are declared to be nontestamentary, the instrument does not have to be executed in compliance with the formalities for wills prescribed under Section 2-502 [72-2-522]; nor does the instrument have to be probated, nor does the personal representative have any power or duty with respect to the assets.

The sole purpose of this section is to prevent the transfers authorized here from being treated as testamentary.

Applying § 72-1-110, MCA, we conclude that the CDs at issue are "deposit agreement[s]," or "other written instrument[s] effective as a contract" and are a valid non-testamentary instrument. See; Malek v. Patten (1984), 208 Mont. 237, 244, 678 P.2d 201, 205. Moreover, "th[e] money...controlled or owned by [the] decedent shall be paid after his death to [the] person designated by the decedent in...the instrument...executed at the same time as the instrument or subsequently." Section 72-1-

9

110(1)(a), MCA. The three CDs naming Signe Lahren as the P.O.D. beneficiary, are valid non-testamentary transfers. Accordingly, the sums at issue belong to Signe Lahren as the P.O.D. beneficiary.

The appellants' argument that §§ 72-6-201 through 211, MCA, enacted in 1993, first provided the authority for P.O.D. designations on CDs, and that there was no earlier authority for P.O.D. designations, is misplaced. First, §§ 72-6-201 through 211, MCA, address multiple person accounts. See Title 72, Chapter 6, Part 2, MCA. S.L. Lahren's CDs were single person accounts and therefore, not governed by Title 72, Chapter 6, Part 2, MCA.

Second, § 72-1-110, MCA, governed S.L. Lahren's single person account at the time the CDs were purchased, at the time of his death and at the time his estate was probated. Section 72-1-110, MCA, provided the authority for S.L. Lahren to designate Signe Lahren as the P.O.D. beneficiary on the face of the CDs. The statute remains valid today, although revised and renumbered at § 72-6-111, MCA (1993). Therefore, S.L. Lahren provided for a valid non-testamentary transfer when he designated Signe Lahren as the P.O.D. beneficiary. We note that if S.L. Lahren's CDs were purchased today, § 72-1-110, MCA, revised by the 1993 Legislature and now renumbered § 72-6-111, MCA, would still apply to CDs such as those at issue in the instant case.

We hold that the P.O.D. designation on the CDs at issue acted to transfer the certificates outside of the probate estate at the time of S.L. Lahren's death as a non-testamentary transfer, pursuant to § 72-1-110, MCA. The CDs are "deposit agreement[s]" or

10

"other written instrument [s] effective as a contract" under the statute, and as such are valid non-testamentary transfers. The District Court did not err in concluding that Signe Lahren is the valid P.O.D. beneficiary of the three CDs at issue and accordingly, we affirm the District Court on this issue.

REVERSED IN PART AND AFFIRMED IN PART.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

11